UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

HEADLEY ALLEN                                    CIVIL ACTION

VERSUS                                           NO. 07-7259

ORLEANS ELECTRIC CONSTRUCTION,                   SECTION "N"  (5)
INC., ET AL.

## ORDER

Before the Court is the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12

(b)(6) (Rec. Doc. 12).  After reviewing the Complaint, the memoranda of the parties, and the

applicable law, the Court rules as set forth herein.

## I.       BACKGROUND

Plaintiff Headley Allen ("Allen"), whose race is black and national origin is Jamaican, filed

suit against Defendant Orleans Electric Construction, Inc. ("Orleans Electric"), Exxonmobil Oil

Corporation, and Chalmette Refining, LLC to challenge their alleged discriminatory and tortious

treatment of him during his employment, as well as their alleged retaliation against him resulting

from his complaints about the unlawful conduct.  In Allen's Complaint, he claims that while he was

working as an electrician for Orleans Electric, an electrical and construction contractor, and while

he was providing electrical services on the property of Chalmette Refinery, LLC., he was attacked

by a co-worker. Allen specifically asserts that he was sitting in a chair in the break room when his

co-employee, James Patton ("Patton"), became upset that Allen was sitting in a particular chair.

Allen claims that Patton screamed racial epithets at him and struck him with a flashlight. Allen

contends that Patton's "only motivation was his overt racism and the color of [Allen]'s skin." (Complaint, ¶ 11).  Based on the above, Allen asserted a claim under Louisiana law against Orleans Electric, as Patton's employer, for the alleged intentional tort committed by Patton.

Orleans Electric has filed the instant motion to dismiss Count IX of Allen's Complaint, which asserts that Orleans Electric is vicariously liable for an alleged physical assault by Allen's co-worker.

## II.    THE ARGUMENTS OF THE PARTIES

Orleans Electric asserts that the facts pled by Allen preclude any recovery against it because Patton was not acting in the course and scope of his employment when the fight occurred. Instead, Orleans Electric asserts that personal animosity between the two workers escalated into a fight over a chair.    According to Orleans Electric, there is no link between the fight and any employment-related duty. Thus, because the facts fail to state a claim against Orleans Electric for the intentional acts of Patton, Orleans Electric contends that this claim must be dismissed.

In opposition, Allen disputes Orleans Electric's assertion that the dispute between he and Patton was an isolated dispute between he and a co-worker over a chair in a break room, which was motivated only by "personal animosity between the two workers." (Memorandum in support of motion to dismiss, p. 2) Instead, Allen points out several specific allegations in his Complaint that he claims support his assertion that  Patton's attack against him was the culmination of "egregious racial harassment and discrimination by Patton and others against [Allen], all of which Defendants were aware but did nothing to stop." (Opposition, p. 3). In sum, Allen asserts that the dismissal of

2

Count IX of his Complaint is unwarranted given that Louisiana law imposes liability for damage caused by an employer's employees where the employer could have prevented the tortious act but failed to do so.

In further support of its motion and in response to Allen's assertions regarding Orleans Electric's knowledge of Patton's improper conduct, Orleans Electric claims that to establish employer liability for the intentional act of an employee and escape the exclusive remedy offered under worker's compensation, Allen must allege that, prior to the fight between he and Patton, Orleans Electric knew the attack was "substantially certain" to occur. Orleans Electric contends that none of Allen's allegations against it give rise to an intentional tort claim because they do not support a finding that Orleans Electric was "substantially certain" that Patton would physically attack Allen based on Patton's past discriminatory conduct against Allen.

## III.    LAW AND ANALYSIS

### A.    The Legal Standard

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004). To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (*quoting Bell Atl. Corp. v. Twombly*, ---U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965. Rule 12(b)(6) motions are viewed with disfavored and are rarely granted. *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir.1988).

### B.    Analysis

In *Baumeister v. Plunkett*, 673 So.2d 994 (1996), the Louisiana Supreme Court set forth the standards to be applied in determining vicarious liability under Louisiana law.  The Court concluded that a hospital was not vicariously liable for the sexual battery committed by one of its supervisors upon a co-employee during working hours on the hospital's premises. The Louisiana Supreme Court explained that the course of employment inquiry refers to time and place, while the scope of employment inquiry examines the employment-related risk of injury. *Baumeister*, 673 So.2d at 996 (citing *Benoit v. Capitol Manufacturing Co.*, 617 So.2d 477, 479 (La.1993)).  The *Baumeister* Court further held that:

> For an employer to be vicariously liable for the tortious acts of its employee the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." *Barto v. Franchise Enterprises, Inc.*, 588 So.2d 1353, 1356 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (1992) (quoting *LeBrane v. Lewis*, 292 So.2d 216, 217, 218 (La.1974)).

*Baumeister*, 673 So.2d at 996.  "An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." *Id.* (quoting *Scott v. Commercial Union Ins. Co.*, 415 So.2d 327, 329 (La.App. 2d Cir.1982). The *Baumeister* Court cites

4

to its decision in *LeBrane v. Lewis*, which sets forth the following factors used to determine whether an employer is vicariously liable for the actions of an employee: (1) whether the tortious act was primarily employment rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. *Baumeister*, 673 So.2d at 996-997 (citing *LeBrane*, 292 So.2d at 218). The particular facts of each case should be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment.

Here, Orleans Electric argues that Allen fails to state a claim for vicarious liability for the intentional tort allegedly committed by Patton because Patton was not performing functions on behalf of Orleans Electric when he attacked Allen. La. Civ.Code art. 2320; *Baumeister*, 673 So.2d at 996; LeBrane, 292 So.2d at 217-18. However, conduct is not automatically removed from the scope of employment merely because it constitutes an intentional tort. *See, e.g., LeBrane*, 292 So.2d at 218-19. It is not evident on the face of the Complaint that Patton's alleged assault on Allen was outside the scope of his employment. Although it remains to be seen whether Allen can establish the elements of respondeat superior, his allegations are sufficient to state a claim at this juncture.

While Orleans Electric argues that the dispute between Allen and Patton was an isolated dispute between two employees over a chair in a break room, which was motivated only by "personal animosity between the two workers," (Memorandum in support of motion to dismiss, p. 2), Allen points out that the allegations in his Complaint reveal that Patton's attack against him was the culmination of "egregious racial harassment and discrimination by Patton and others against

[Allen], all of which Defendants were aware but did nothing to stop." (Opposition, p. 3).

Allen's Complaint alleges that certain supervisors at Orleans Electric either knew of the unlawful conduct committed by Orleans Electric employees or participated in it themselves. Specifically, Allen claims his direct supervisor, Nick Dicidou ("Dicidou"), made cruel and insulting remarks to and about Allen based on his race and national origin.  For example, Dicidou allegedly stated that Allen was from a "third world country" and probably ate "fucking bugs and shit." (Complaint ¶ 9(a)).  The Complaint alleges that Allen was treated like a second-class citizen and was forced to ride in the back of a company truck with other black employees, while white employees were permitted (presumably by company management) to sit in front. (Complaint ¶ 9(b)). Allen claims black employees were not allowed to drive the company truck, while white employees were. (Complaint ¶ 9(b)).  Allen also asserts that Dicidou frequently let Patton, who was white, miss work while remaining on the clock and paying him.  (Complaint ¶ 9(c)).

Allen claims that the manner in which Dicidou treated him encouraged others to treat him in a similarly disrespectful manner.  Allen alleges that Orleans Electric's supervisors permitted white employees, including Patton, to use racial epithets against black employees. (Complaint ¶ 9(e)). Allen alleges that Patton had an argument with another black employee and stated to Dicidou words to the effect of "You have to come and get this stupid nigger away from me before I have to kill him." (Id.) Allen asserts that this statement was made in the presence of another white supervisor, Kenny Lotner. (Id.) The Complaint alleges that neither supervisor took any disciplinary or corrective action against Patton for his behavior. (Id.)

6

Thus, Allen asserts that Patton's attack on him did not arise from a dispute over a chair, but instead, resulted from the culmination of racial harassment and discrimination of which Orleans Electric was well aware, and that Orleans Electric should be held vicariously liable for Patton's attack on him.  Pursuant to Louisiana Civil Code article 2320, Allen claims Orleans Electric is responsible for damage caused by Patton because Orleans Electric "might have prevented the act which caused the damage."

Orleans Electric, on the other hand, claims that worker's compensation is Allen's only remedy because he failed to state a claim for negligence against it for allegedly creating an unsafe work environment.  In Louisiana, an employee's exclusive remedy for personal injury against his employer is worker's compensation. However, under La. R.S. § 23:1032(B), one narrow exception exists when the injury was caused by the intentional tort of the employer. Orleans Electric claims that to qualify for this narrow exception, a "substantially certain" standard is applied, not the "knew or should have known" standard espoused in La. Civ. Code art. 2320, as articulated by Allen in his opposition.

This Court determines that no matter which standard is applied, Allen has alleged sufficient facts in his Complaint to withstand dismissal at this juncture.  Whether Orleans Electric knew or should have known that Patton's attack on Allen was going to occur or whether it knew with substantial certainty that this attack was going to occur is better suited for potential disposal in a motion for summary judgment, after sufficient discovery has been completed.  Taking into account the fact that 12(b)(6) motions are largely disfavored and are rarely granted, the Court finds that

7

Allen has pled enough facts to state a claim for relief that is plausible on its face in his 14-page

Complaint.

## IV.     CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that the   **Motion to Dismiss Pursuant to Federal Rule of Civil**

**Procedure 12 (B)(6) (Rec. Doc. 12)** is **DENIED.**

New Orleans, Louisiana, this 21st day of February, 2008.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**